UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

      Plaintiff,

  v.

WHIRLPOOL CORPORATION and
JOSEPH SHARKEY,

      Defendants,

WHIRLPOOL CORPORATION,

      Counter-Claimant,

  v.

WHITESELL CORPORATION,

      Counter-Defendant.

_____/

Case No. 1:05-CV-679

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff/Counter-Defendant Whitesell Corporation's Motion for a Preliminary Injunction. Plaintiff has also, in a separate motion, requested a hearing on its motion for preliminary injunctive relief. The injunctive motion has been fully briefed such that the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR 7.3(d). Consequently, Plaintiff's request for a hearing is denied. Turning to the substantive merits of Plaintiff's Motion for a Preliminary Injunction, the Court finds as follows.

**I.     BACKGROUND**

This action concerns a contract dispute and is properly before the Court on diversity jurisdiction.[1]  Defendant/Counter-Claimant Whirlpool Corporation is a global manufacturer and marketer of major home appliances, operating from its world headquarters in Benton Harbor, Michigan.[2]  Plaintiff supplies Defendant Whirlpool with screws and fasteners for end use in Defendant's appliances from its headquarters in Muscle Shoals, Alabama.

In 2002, to define the expectations of their supplier/manufacturer relationship, the parties negotiated and executed what they termed a Strategic Alliance Agreement.  The Agreement (exclusive of schedules and addendums) is a 31-page document, divided into 17 substantive sections and various subsections.  Under section 13.7 of the Agreement, the parties agreed to the following:

> [Continuity of Supply.]  The parties acknowledge the importance of maintaining continuity of supply to Whirlpool.  Supplier agrees that it will not interrupt or terminate the supply of products under this Agreement.  If a dispute arises under this Agreement or otherwise, Supplier will continue to supply product to Whirlpool and Whirlpool will continue to pay for the same.  Supplier shall not use a threat of nonshipment and Whirlpool shall not use a threat of nonpayment during the course of any dispute.

(Def.'s Resp. at 5-6).  In making the instant request for preliminary injunctive relief, Plaintiff relies heavily on section 13.7.  The parties expressly agreed that Michigan law would control any contractual disputes.

---

[1] Plaintiff's Complaint was originally filed in the United States District Court for the Northern District of Alabama.  In that Court, the Honorable Charles Lynwood Smith, Jr. determined that venue was proper in this Court and transferred Plaintiff's claims against Defendants Whirlpool and Joseph Sharkey to this judicial district.  Plaintiff also lodged allegations of wrongdoing against Whirlpool Mexico S.A. de C.V. (a subsidiary corporation of Defendant Whirlpool), but Judge Smith dismissed those claims without prejudice in light of Plaintiff's failure to effect proper service.

[2] In this Opinion, the designation "Defendant" will refer only to Defendant Whirlpool as Defendant Sharkey's connection to the case at this stage in the proceedings is unimportant.

In 2003, the European Union issued an environmental directive concerning hazardous substances contained in electrical and electronic equipment. This directive prohibited, *inter alia*, the sale of any electronic product containing hexavalent chromium in member states. Defendant sells its appliances to customers residing in European Union member states. Plaintiff uses hexavalent chromium in the parts it supplies to Defendant.

In order to satisfy Defendant's insatiable and fluctuating appetite for parts, Plaintiff maintains an extensive supply of its product. This ready-made stock was produced with hexavalent chromium. According to Plaintiff and in light of the European Union's environmental directive, Defendant began to purchase parts for its appliances elsewhere and breached the Agreement. Plaintiff also avers that Defendant has refused to provide Plaintiff with specifications for the design and manufacture of alternative parts compliant with the European Union's environmental directive. Plaintiff's Motion for a Preliminary Injunction requests an order that: (1) enforces section 13.7 of the Agreement and prevents Defendant from buying parts elsewhere; (2) requires Defendant to provide it with design specifications for alternative compliant parts; and (3) compels Defendant to compensate Plaintiff for the costs of producing compliant parts and reforming existing stock into compliance.[3]

## II.   CONTROLLING STANDARDS

Determining whether a preliminary injunction shall issue under Federal Rule of Civil Procedure 65 is a question that resides squarely within the Court's discretion. *Lexmark Int'l Inc. v. Static Control Components Inc.*, 387 F.3d 522, 532 (6th Cir. 2004); *ACLU v. Taft*, 385 F.3d 641, 645

---

[3] Plaintiff makes a fourth injunctive request for relief, in addition to a stock "any other relief the Court deems just and appropriate." However, Plaintiff's fourth request for relief is principally the same as its first, in that it wants to prevent Defendant from buying parts from other suppliers.

(6th Cir. 2004); *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). In exercising such discretion, the Sixth Circuit Court of Appeals has instructed that:

> It is well-settled that district courts evaluating requests for preliminary injunctive relief must consider four interrelated criteria:
>
> 1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
> 2) Whether the plaintiff has shown irreparable injury;
> 3) Whether the issuance of a preliminary injunction would cause substantial harm to others; [and]
> 4) Whether the public interest would be served by issuing a preliminary injunction.

*N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989); *see also Edward Rose & Sons*, 384 F.3d at 261; *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 476 (6th Cir. 2003). These criteria are meant to serve as factors to be balanced, rather than rigid, elemental requirements that must be satisfied in every case. *Jones*, 341 F.3d at 476; *In re DeLorean Motors Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

The first factor—the likelihood or probability of success on the underlying merits—is the most critical inquiry of the four criteria. *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). A stronger showing of likelihood of success on the merits is required when the remaining factors militate against granting injunctive relief; however, when the other factors support injunctive relief, less likelihood of success is required. *Performance Unlimited Inc. v. Questar Publ'rs Inc.*, 52 F.3d 1373, 1385-86 (6th Cir. 1995). It is with these principles in mind that the Court turns to Plaintiff's request to preliminarily enjoin Defendant.

### III.   DISCUSSION

Courts are counseled to make specific findings as to each factor, unless discussion of fewer factors will dispose of the issue. *G & V Lounge Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994). Faithful to Sixth Circuit precedent, the Court has determined the following.

#### A.   Whether Plaintiff Has Shown a Strong or Substantial Likelihood or Probability of Success on the Merits

Plaintiff considers section 13.7 of the Agreement to be a *status quo* clause. That is, should a dispute arise under the Agreement, the parties agreed that Plaintiff would continue to sell and Defendant would continue to buy, maintaining the *status quo*. All of Plaintiff's claims in its Motion for a Preliminary Injunction grow out of an interpretation of section 13.7 in its favor. Defendant counters that section 13.7 only obligates it to pay for acceptable goods, and that due to the European Union's environmental directive, Plaintiff's parts are non-conforming goods. Furthermore, Plaintiff specifically warranted that its parts would comply with all laws and regulations and—in their current form—Plaintiff's parts are noncompliant.

Plaintiff also contends that Defendant has breached its duty of good faith. Defendant responds by noting that the Agreement only obligates it to purchase twelve weeks of Plaintiff's parts should a part become obsolete, not Plaintiff's entire stock of noncompliant, obsolete parts. Furthermore, Defendant points out that it reduced its orders of Plaintiff's parts in good faith, in that it has a valid reason for the reduction: Plaintiff's parts are noncompliant with the European Union environmental directive. Defendant continues to purchase Plaintiff's parts for use in appliances sold outside Europe.

Thus, the Court does not believe Plaintiff has shown a strong or substantial likelihood or probability of success on the merits.[4] This does mean that Plaintiff will not be able to ultimately succeed on its claims at some point in the proceeding. The Court simply believes that at this point, Plaintiff has not demonstrated a strong or substantial likelihood or probability of success on the merits entitling it to the extraordinary relief requested. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see Edward Rose & Sons*, 384 F.3d at 261 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (findings of fact and conclusions of law made when considering a preliminary injunction motion are not binding when later considering the merits).

### B.     Whether Plaintiff Has Shown Irreparable Injury

Moreover, and particularly fatal to Plaintiff's request for injunctive relief, is the fact that Plaintiff cannot show any irreparable injury. Plaintiff again points to section 13.7 and urges the Court to compel Defendant to specifically perform under its terms so Plaintiff's operations will not be disrupted. Plaintiff further suggests its status in the marketplace will be injured unless Defendant is compelled to buy its products.

An injury is irreparable if it is not fully compensable by monetary damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [injunctive relief], are not enough.

---

[4] Plaintiff raised several other arguments the Court omitted from its discussion since Plaintiff has not demonstrated a strong likelihood of success on the merits. Plaintiff's arguments under the Agreement are better suited to a motion for summary judgment and will be considered when such motion is made. The Court's discussion today was meant merely to indicate some of the perceived problems with Plaintiff's claim to injunctive relief and why the Court believes it has not make a proper showing.

The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). The typical remedy for breach of contract is compensatory damages. Plaintiff admits the same. Therefore, the Court finds that Plaintiff has not shown that it is seeking anything other than a monetary award and the requisite irreparable injury is absent. Plaintiff's fear that its cultivated goodwill in the marketplace will suffer is still a monetary concern that can be accounted for with ordinary damages.

      **C.**    **Whether the Issuance of a Preliminary Injunction Would Cause Substantial Harm to Others**

This is an ordinary commercial dispute between a parts vendor and an appliance manufacturer. The Court finds the potential harm to others by enjoining Defendant is not an issue.

      **D.**    **Whether the Public Interest Would Be Served by Issuing a Preliminary Injunction**

Again, this is a private dispute and has little to no impact upon the public one way or the other. Neither party has made any credible suggestion that the public interest would be implicated by injunctive relief. The Court deems that the public interest would not be served by enjoining Defendant.

As is readily apparent, the balance of factors tips decidedly against granting Plaintiff's request for a preliminary injunction. Plaintiff implicitly concedes as much—by devoting a total of two pages of its briefing to the traditional preliminary injunction analysis—but believes that the ordinary preliminary injunction is inapplicable to this case.

**E.     Whether the Standard Preliminary Injunctive Factors Apply to a *Status Quo* Contract Clause**

Plaintiff's principal argument for preliminary injunctive relief is that a *status quo* contractual injunction may be enforced without resort to the traditional preliminary injunction factors. Plaintiff contends that the Agreement's *status quo* clause provides for a bargained for injunction and resort to the four factors discussed above is unnecessary. For this contention, Plaintiff relies chiefly on four cases: *Nemer Jeep-Eagle Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430 (2nd Cir. 1993); *RGI Inc. v. Tucker & Assoc. Inc.*, 858 F.2d 227 (5th Cir. 1988); *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468 (2d Cir. 1980); and *Org. Comm. for the Goodwill Games Inc. v. Goodwill Games Inc*, 919 F. Supp. 21 (D. D.C. 1995).

The Court finds Plaintiff's cited case law distinguishable and inapplicable to the case at bar. The principles espoused in the cited cases was that an issuing court can—in its discretion—preliminarily enjoin the parties and require them to maintain the *status quo* of their relationship *pending arbitration*. At least one court was concerned with expeditiously moving the dispute to the arbitral forum as fast as possible to facilitate decision. *See RGI Inc.*, 613 F.2d at 230. Such an ingredient is absent from this case. The parties have never suggested their dispute is arbitrable or that the ultimate decision in this case will be made by another tribunal.

The balance of Plaintiff's cited authority required the movant to show that it would suffer irreparable damages absent an injunctive relief. *See Nemer Jeep-Eagle Inc.*, 992 F.2d at 436; *Guinness-Harp Corp.*, 613 F.2d at 473; *Org. Comm. for the Goodwill Games Inc.*, 919 F. Supp. at 26. As discussed above, Plaintiff is in no danger of suffering irreparable harm and has an adequate remedy at law. Thus, even under the legal framework advocated by Plaintiff, a preliminary

injunction is inappropriate and the Court discerns no reason why it should not be made to show entitlement to a preliminary injunction under the traditional analysis. In light of the foregoing, the Court will deny Plaintiff's request for injunctive relief.

### IV.     CONCLUSION

Therefore, the Court will deny Plaintiff/Counter-Defendant Whitesell Corporation's Motion for a Preliminary Injunction and Motion for a Hearing. An Order consistent with this Opinion shall issue.

|  |  |
|---|---|
| | /s/ Richard Alan Enslen |
| DATED in Kalamazoo, MI: | RICHARD ALAN ENSLEN |
| April 10, 2006 | SENIOR UNITED STATES DISTRICT JUDGE |