UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

       Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

       Defendants,

and

WHIRLPOOL CORPORATION,

       Counter-Plaintiff,

v.

WHITESELL CORPORATION,

       Counter-Defendant.
                                    /

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## **OPINION**

      This matter is before the Court on Defendant and Counter-Plaintiff Whirlpool Corporation's motion for partial summary judgment on Plaintiff and Counter-Defendant Whitesell Corporation's claim for parts excluded from the parties' 2002 Strategic Alliance Agreement (Dkt. No. 425). For the reasons that follow, this motion will be granted in part and denied in part.

## I. Factual Background

On March 15, 2002, the parties jointly executed a "Strategic Alliance Agreement" ("2002 SAA"). Generally, the 2002 SAA required Defendant to purchase all of its requirements for certain categories of "fasteners" (screws, nails, nuts, bolts, etc.) from Plaintiff over the term of the agreement. Specifically, Defendant's purchase obligations were governed by a complicated series of exhibits and contractual provisions.

The 2002 SAA contained several exceptions to Defendant's purchase obligations, two of which are notable for purposes of the present motion. First, the agreement provided that Defendant was not required to purchase the thirteen items listed on Exhibit B-2 from Plaintiff, regardless of whether those items fell within the fastener categories covered by the agreement. (2002 SAA Ex. B-2.) Second, the agreement contained a provision stating that "[t]he Whirlpool manufacturing divisions that are subject to this agreement are listed on Exhibit C." (2002 SAA § 1.) Exhibit C-1 contained a list of eleven Whirlpool facilities. Whirlpool's Benton Harbor facility was not on this list.

## II. Law and Analysis

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am.*

*Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). "When deciding a motion for summary disposition in a claim for breach of contract, a court may interpret the contract only where the terms are clear. If the terms are ambiguous, a factual development is necessary to determine the intent of the parties, and summary disposition is inappropriate." *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994). "Contract language is ambiguous if it is subject to two reasonable interpretations." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996).

1. The Items on Exhibit B-2

Plaintiff does not assert a breach of contract claim to recover lost profits for Defendant's failure to purchase the items listed on Exhibit B-2 from Plaintiff. Plaintiff instead asserts a fraud claim for Defendant's failure to purchase these items from Plaintiff. According to Plaintiff, Defendant fraudulently represented that it could not purchase the Exhibit B-2 items from Plaintiff because it was contractually bound to purchase those items from other suppliers. Plaintiff argues that it would not have agreed to a version of the 2002 SAA that excluded the Exhibit B-2 items had it known the truth. In its October 5, 2009 opinion (Dkt. No. 601), this Court concluded that Plaintiff's fraud claim based on Defendant's alleged misrepresentation about the Exhibit B-2 items is barred by the no-reliance clause in Section 16.10 of the 2002 SAA, because the no-reliance clause abrogates the reliance element of Plaintiff's fraud claim as a matter of law. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim for fraud based on Defendant's alleged

3

misrepresentation regarding the parts listed on Exhibit B-2.

2. Part 8557888

Plaintiff claims lost profits for Defendant's failure to purchase part number 8557888 from Plaintiff. Defendant created part number 8557888, a part within the scope of the agreement, in 2003, and immediately began purchasing it from other suppliers without giving Plaintiff the opportunity to submit a price quote to supply the part in accordance with Section 4.6 of the agreement.[1] Defendant argues that it was entitled to purchase this part from suppliers other than Plaintiff because of a provision in Section 1 of the 2002 SAA stating that "[t]he Whirlpool manufacturing divisions that are subject to this Agreement are listed on Exhibit C." The only facility that purchased part 8557888 was Defendant's Benton Harbor facility, and Defendant's Benton Harbor facility was not listed on Exhibit C. Therefore, Defendant argues that it is entitled to summary judgment on Plaintiff's claim for lost profits for part 8557888.

Plaintiff resists Defendant's motion by first arguing that, if the language in Section 1 and Exhibit C itself prescribe any limits at all, they only prescribe limits relating to part delivery schedules, payment, production, and other logistical matters. Plaintiff argues that the language in Section 1 and Exhibit C itself do not in any way exclude any of Defendant's

---

[1] Defendant does not argue that it did permit Plaintiff to submit a price quote, nor does Defendant argue that, if it had permitted Plaintiff to submit a price quote, Plaintiff's price quote would not have been the lowest. Therefore, the Court's analysis proceeds on the assumption that Plaintiff would have won the right to supply part 8557888 to Defendant had it been permitted to submit a quote to supply that item.

4

facilities from having to *purchase* Exhibit B parts from Plaintiff. However, the language in Section 1 does not say that the Whirlpool manufacturing divisions that are subject to *certain logistical limitations* are listed on Exhibit C. It states that the manufacturing divisions that are subject to the entire 2002 SAA are listed on Exhibit C. Where the terms of a contract are clear, a court should not disrupt the intentions of the parties. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). Thus, the Court holds that Whirlpool manufacturing divisions not listed on Exhibit C are not subject to the purchase requirements created by the 2002 SAA.

Nevertheless, several issues of material fact preclude summary judgment in favor of Defendant on Plaintiff's claim for lost profits for Part 8557888. Because the language in Section 1 addresses only Whirlpool manufacturing divisions, an open question remains as to whether Whirlpool facilities that are not considered manufacturing divisions are subject to the 2002 SAA. Though the parties' failure to include a provision addressing the applicability of the agreement to non-manufacturing facilities could suggest that those facilities are not subject to the 2002 SAA, Plaintiff directs the Court's attention to language at the top of the Exhibit B to the 2002 SAA,[2] which suggests that the agreement is intended to apply to all North American divisions, and not just manufacturing divisions. To overcome Defendant's present motion, Plaintiff must also establish that the Benton Harbor facility is

---

[2] It states: "Year 2002-All N/A Divisions - Currently Sourced Items with Whitesell"

not a manufacturing facility, but this, too, presents an issue of material fact.[3] Because Plaintiff has introduced sufficient evidence to suggest that all Whirlpool non-manufacturing divisions are subject to the 2002 SAA, and that Whirlpool's Benton Harbor facility is a non-manufacturing facility, summary judgment in favor of Defendant on Plaintiff's claim for lost profits for Part 8557888 is not appropriate. *See Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002).

Summary judgment in favor of Defendant is not appropriate for another reason. Even if the Court determined that non-manufacturing divisions were not subject to the 2002 SAA, or that the Benton Harbor facility was a manufacturing division, there would still be a genuine issue of material fact as to whether the agreement applied to items used, but not purchased, by a facility on Exhibit C. Plaintiff presents evidence that, although Defendant's Benton Harbor facility purchased Part 8557888, that part was later used by Defendant's Clyde facility, which is listed on Exhibit C. The 2002 SAA does not clearly indicate whether the facilities that it applies to must purchase Exhibit B items from Plaintiff when they use those items, purchase those items, or both. This is an ambiguous question of contract interpretation that should be left to the fact finder. *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994).

Plaintiff's claim for lost profits for part 8557888 presents three issues of fact for trial: (1) whether Whirlpool facilities that are not considered manufacturing divisions are subject

---

[3]Both parties have briefed this issue, and the Court concludes that it presents a genuine issue of material fact. (Dkt. Nos. 598, 603.)

to the 2002 SAA; (2) whether Whirlpool's Benton Harbor facility is not a manufacturing facility; and (3) whether the 2002 SAA applies to items used, but not purchased, by a facility covered by the 2002 SAA. Summary judgment in favor of Defendant on Plaintiff's claims for lost profits for item 8557888 is not appropriate.

### III. Conclusion

Defendant is entitled to summary judgment on Plaintiff's claim for fraud based on Defendant's alleged misrepresentation that it could not purchase the parts listed on Exhibit B-2 from Plaintiff because it was already contractually obligated to purchase those parts from other suppliers. Defendant is not entitled to summary judgment on Plaintiff's claim for breach of contract for Defendant's failure to purchase item 8557888 from Plaintiff.

An order consistent with this opinion will be entered.


Dated: October 13, 2009                     /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE