UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

       Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

       Defendants,

and

WHIRLPOOL CORPORATION,

       Counter-Plaintiff,

v.

WHITESELL CORPORATION,

       Counter-Defendant.
                                            /

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## **OPINION**

This matter is before the Court on Defendant and Counter-Plaintiff Whirlpool Corporation's motion for partial summary judgment on Plaintiff and Counter-Defendant Whitesell Corporation's obsolescence claim (Dkt. No. 436). For the reasons that follow, this motion will be granted in part and denied in part.

# I. Factual Background

On March 15, 2002, the parties jointly executed a "Strategic Alliance Agreement" ("2002 SAA"). Generally, the 2002 SAA required Defendant to purchase all of its requirements for certain categories of "fasteners" (screws, nails, nuts, bolts, etc.) from Plaintiff over the term of the agreement. Specifically, Defendant's purchase obligations were governed by a complicated series of exhibits and contractual provisions.

The 2002 SAA anticipated that, during the course of the agreement, Defendant would make changes to its appliance-production processes, and as a result it would no longer need some of the items that it was contractually obligated to purchase from Plaintiff. These items are termed "obsolete" items. Section 3.2D of the 2002 SAA provided that Defendant was required to purchase a specific number of obsolete items from Plaintiff even after Defendant's demand for that item ceased (the "obsolescence provision"):

> For any Item having an annual forecasted quantity of 100,000 pieces or less, Whirlpool agrees to purchase the minimum quantity, quoted by Whitesell or current balance on hand. For any Item having an annual forecasted quantity greater than 100,000 pieces, Whirlpool agrees to purchase such Item for a period up to twelve (12) weeks. This twelve week use-up period shall be measured from the date of a notice of cancellation from a authorized Whirlpool individual or the effective date of an Engineering Change Notice. The twelve (12) week quantity for which Whirlpool may be obligated is and shall be not greater than that quantity constituting the last normal twelve (12) weekly quantities.

(2002 SAA § 3.2D.)

The 2002 SAA was set to expire on December 31, 2007, provided that one of the parties issued a "notice of termination" at least six months prior to that date. (2002 SAA § 2.) The period between the issuance of the termination notice and the expiration of the contract term is referred to as the "phase-out period." (2002 SAA § 13.4.) Defendant issued a notice of termination on February 15, 2007.

## II. Law and Analysis

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"When deciding a motion for summary disposition in a claim for breach of contract, a court may interpret the contract only where the terms are clear. If the terms are ambiguous, a factual development is necessary to determine the intent of the parties, and summary disposition is inappropriate." *Michaels v. Amway Corp.*, 522 N.W.2d 703, 706 (Mich. Ct. App. 1994). "Contract language is ambiguous if it is subject to two reasonable interpretations." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996).

1. Obsolete Items

Defendant first argues that Plaintiff cannot claim lost profits for items that Defendant failed to purchase pursuant to the obsolescence provision because Plaintiff has failed to introduce sufficient evidence to confirm the existence and extent of damages under the obsolescence provision. Defendant argues that, because Defendant's purchase obligations under the obsolescence provision are in part dependant on quantity-based categories such as minimum quantities, on-hand balances, and weekly-use quantities, Plaintiff is not entitled to lost profits for obsolete items unless it presents evidence that, for each obsolete item for which Plaintiff claims lost profits, the number of items in the relevant quantity-based category or categories is above zero.

On August 10, 2009, this Court issued a show-cause order asking Plaintiff to present and organize sufficient product information to confirm the existence of items that Defendant must purchase pursuant to the obsolescence provision. (Dkt. No. 547, Order.) On August

4

17, 2009, Plaintiff responded by presenting to the Court the requested information, including information pertaining to minimum quantities, weekly-use quantities, and annual quantities for each part for which Plaintiff claims damages under the obsolescence provision. (Dkt. No. 549, Ex. H.) Even if, as Defendant argues, Plaintiff has not yet presented all the relevant information in support of its obsolescence claim, it is not required to do so at the summary judgment stage. *See Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (holding that the nonmoving party need only present evidence sufficient to create an issue of fact). The Court is satisfied that Plaintiff has presented sufficient evidence regarding its obsolescence claim to withstand Defendant's current motion.

2. Defendant's Purchase Obligations During the Phase-Out Period

Defendant next argues that, regardless of whether Plaintiff has presented sufficient evidence in support of its obsolescence claim, Plaintiff is not permitted to claim any damages for Defendant's failure to purchase obsolete items during the phase-out period. Defendant relies on Section 13.4 of the 2002 SAA, which replaced "the purchase commitment set forth in Section 3" with a requirement that Defendant "use its best efforts to gradually decrease the quantity of Items purchased from [Plaintiff]" during the phase-out period. Defendant argues that, because the obsolescence provision is in Section 3 of the agreement, during the phase-out period Defendant is not bound by the specific purchase requirements in the obsolescence provision, but is instead required only to use best efforts to purchase obsolete items from Plaintiff. Defendant further argues that the "best efforts" standard in this context does not require Defendant to purchase any obsolete items from Plaintiff.

However, there is an ambiguous question of contract interpretation as to whether a "best efforts" standard replaced the specific purchase requirements of Section 3.2D during the phase-out period. First, Section 13.4 relieves only one "purchase commitment" (singular) set forth in Section 3. (2002 SAA § 13.4.) Section 3, however, sets forth two purchase commitments: (1) the requirement that Defendant purchase the items listed on Exhibit B from Plaintiff (§ 3.1); and (2) the purchase commitment contained in the obsolescence provision. (§ 3.2D.) It is possible that Section 13.4 relieved Defendant only of the former purchase commitment and not the latter, especially considering that the obligation to purchase all Exhibit B items is arguably the principal obligation contained in the 2002 SAA and the more likely subject of the relief provided by Section 13.4. Second, Section 3.2D provides that the specific purchase obligations for obsolete items will remain in effect "through the remaining term of the agreement," or December 31, 2007. (2002 SAA § 3.2D.) This language conflicts with an interpretation of the contract that would replace the specific purchase obligations for obsolete items with a "best efforts" standard after February 15, 2007. The Court further notes that, even if a "best efforts" standard did replace the specific purchase requirements of Section 3.2D during the phase-out period, there is a question of fact as to what the "best efforts" standard required in this context and whether Defendant complied with it. *See Pemberton v. Dharmani*, 525 N.W.2d 497, 501 n.1 (Mich. Ct. App. 1994) ("The existence of good faith is normally a question of fact for the jury that should not be resolved by summary disposition unless the evidence is undisputed or conclusive."). For these reasons,

6

Defendant is not entitled to summary judgment on Plaintiff's claims for damages for Defendant's failure to purchase items from Plaintiff under the obsolescence provision during the phase-out period.

3. Tooling Costs

Plaintiff asserts a claim to recover the tooling costs associated with obsolete items. Whether Plaintiff is entitled to recover these costs depends on whether Defendant took possession of the tooling. Section 9.1 of the 2002 SAA requires Defendant to submit payment for tooling "within thirty (30) days after taking possession" of it. Section 9.1B states that "[t]he amount payable for tooling . . . shall be [Plaintiff's] cost . . . as of the time of possession by [Defendant]," and also requires that disputes about tooling costs should go to a mutually-acceptable accounting firm only if not resolved "within sixty (60) days after [Defendant] has taken possession of [the tooling]." These provisions clearly indicate that Defendant is liable for the tooling costs of obsolete items when Defendant takes possession of the tooling.

Plaintiff seems to argue that Defendant is liable for all of the tooling costs associated with obsolete items, regardless of whether Defendant actually took possession of the tooling. Plaintiff presents evidence that, under a previous supply contract between Plaintiff and Defendant, Defendant offered to compensate Plaintiff for the tooling costs of obsolete items. (Dkt. No. 468, Pl.'s Resp. 17 (referring to Ex. 15).) Plaintiff also presents evidence that

7

Defendant has compensated other suppliers for the tooling costs of obsolete items.[1] In relying on this evidence, Plaintiff seems to argue that a "course of dealing" or a "usage of trade," within the meaning of Mich. Comp. Laws § 440.1205, has been established. Section 440.1205 permits a course of dealing or usage of trade to supplement the terms of a written agreement, but only if the course of dealing or usage of trade is not inconsistent with the express terms of the written agreement. Mich Comp. Laws § 440.1205(4). The 2002 SAA explicitly states that Defendant is not required to compensate Plaintiff for the tooling costs of obsolete items when Defendant does not take possession of the tooling. (2002 SAA § 9.1B ("Whirpool shall not be required to take possession of, or make payment to Supplier for, any [tooling].").) Plaintiff may not use evidence of Defendant's past arrangements with Plaintiff or other suppliers to suggest that Defendant was required to pay for tooling costs associated with obsolete items when Defendant has not taken possession of the tooling because this evidence would be inconsistent with an express term of the 2002 SAA. Defendant is entitled to summary judgment on Plaintiff's claims for tooling costs associated with obsolete item, as long as Defendant has not taken possession of the tooling.

### III. Conclusion

Plaintiff has introduced sufficient evidence pertaining to the existence and extent of

---

[1] In its response, Plaintiff refers to Exhibit 21 to support this claim, which is supposed to contain an e-mail exchange between Defendant and one of Plaintiff's competitors in which Defendant agrees to supply the tooling costs of obsolete parts. Exhibit 21 does not contain this e-mail exchange. However, in its rely brief Defendant does not deny that it compensates other suppliers for tooling costs of obsolete items. (Dkt. No. 495, Def.'s Reply 2.)

its damages under the obsolescence provision to withstand Defendant's present motion. Defendant is not entitled to summary judgment on Plaintiff's obsolescence claims arising during the phase-out period because there are issues of fact as to whether a "best efforts" standard replaced the specific purchase obligations of the obsolescence provision during this period, and as to what the "best efforts" standard required and whether Defendant complied with it. Finally, Defendant is entitled to summary judgment on Plaintiff's claims for tooling costs associated with obsolete items, to the extent that Defendant has not taken possession of the tooling, because the contract clearly excuses Defendant from having to pay these costs.

An order consistent with this opinion will be entered.


Dated: October 13, 2009                                /s/ Robert Holmes Bell
                                                                      ROBERT HOLMES BELL
                                                                      UNITED STATES DISTRICT JUDGE