UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

  Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

  Defendants,

and

WHIRLPOOL CORPORATION,

  Counter-Plaintiff,

v.

WHITESELL CORPORATION,

  Counter-Defendant.
_____/

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## **OPINION**

  This matter is before the Court on Defendant and Counter-Plaintiff Whirlpool Corporation's motion for partial summary judgment on Count III of its counterclaim against Plaintiff and Counter-Defendant Whitesell Corporation (Dkt. No. 438). For the reasons that follow, this motion will be granted in part and denied in part.

## I. Factual Background

On March 15, 2002, the parties jointly executed a "Strategic Alliance Agreement" ("2002 SAA"). Generally, the 2002 SAA required Defendant to purchase all of its requirements for certain categories of "fasteners" (screws, nails, nuts, bolts, etc.) from Plaintiff over the term of the agreement.

Section 6.1 of the 2002 SAA provided that Plaintiff:

> shall be required to develop and recommend to [Defendant], and implement if so determined by [Defendant], during each calendar year during the term of this Agreement, projects which will result in improvements in productivity adequate to generate reductions in [Defendant's] costs equal to at least five percent (5%) of [Defendant's] total purchases of Items hereunder during such calendar year.

(2002 SAA § 6.1) (hereinafter referred to as the "Total Cost Productivity," or "TCP," requirement).[1] Section 6.1A required that the cost reduction proposals presented by Plaintiff: (1) be based on "reasonable, verifiable assumptions regarding the cost savings to be realized as a result of implementing [the] project"; (2) "set forth the estimated costs . . . of implementing the project"; and (3) "identify the nature and estimated amount of the cost savings to be realized by Whirlpool." (*Id.* at § 6.1A.) If the cost reduction capabilities of a given TCP project were clear, then the amount of cost reduction would be credited toward

---

[1] Plaintiff argues that this provision does not create a requirement, but merely a non-binding goal. Plaintiff presents extrinsic evidence to this effect. However, where the terms of a written agreement are clear, extrinsic evidence may not be introduced to vary those terms. *See, e.g.*, *Detroit Edison Co. v. Zoner*, 163 N.W.2d 496, 498 (Mich. Ct. App. 1968). Section 6.1 clearly states that Plaintiff "shall be required" to comply with the TCP requirement each year.

2

the 5% requirement, whether Defendant implemented the program or not. (*Id.* at § 6.1A.) If the cost reduction capabilities of a given project were not clear, then the parties agreed to work in good faith to determine the cost reduction capabilities. (*Id.* at § 6.2.)

## II. Law and Analysis

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006). In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

1. Years 2003-2006

Defendant asserts a breach of contract claim against Plaintiff for Plaintiff's failure to satisfy the TCP requirement in years 2003-2006. Defendant has moved for summary judgment on this claim. Defendant bears the burden of presenting evidence that Plaintiff failed to comply with the TCP requirement from 2003-2006. *Celotex*, 477 U.S. at 322. Defendant relies on the deposition testimony of Neil Whitesell, Plaintiff's CEO. According to Defendant, Neil Whitesell admitted that Plaintiff used the same TCP programs that it used in 2002 to satisfy the TCP requirement in every year thereafter. (Dkt. No. 438, Def.'s Mot. Summ. J. 3-4.)

Defendant first seems to use Neil Whitesell's testimony to argue that Plaintiff did not even propose any TCP programs from 2003-2006. (*Id.* at 4, 6, 7 (all alleging Plaintiff did not even attempt to meet the TCP requirement).) This argument is untenable. Plaintiff presents summaries of its TCP proposals for years 2003-2006 on the last page of each subpart to Exhibit 4 of Plaintiff's response. (Dkt. No. 464, Pl.'s Resp. Ex. 4.) The summaries clearly indicate that Plaintiff identified programs resulting in potential savings to Defendant of well over 5% of Defendant's total costs. For example, each of the summaries includes the 3% yearly price reduction for items listed in Exhibit B that was required by Section 4.4 of the 2002 SAA as one cost-saving measure. (*Id.* at Ex. 4 tab A p. 33, Ex. 4 tab B p. 35, Ex. 4 tab C p. 35, Ex. 4 tab D p. 35.) Defendant acknowledged that this 3% yearly price reduction, even though required under the 2002 SAA, counted toward Plaintiff's 5% TCP requirement. (*Id.* at Ex. 11 p. 20-21.) Additionally, some of the summaries identify the price increases that

4

Plaintiff absorbed and did not pass along to Defendant as another cost-savings measure. (*Id.* at Ex. 4 tab B p. 35, Ex. 4 tab C p. 35, Ex. 4 tab D p. 35.) Defendant also acknowledged that money Plaintiff saved Defendant by absorbing these price increases counted toward Plaintiff's 5% TCP requirement. (*Id.* at Ex. 26.)

Defendant then seems to use Neil Whitesell's testimony to argue that, even if Plaintiff did submit TCP proposals each year, the programs contained in the TCP proposals were the same, and that this is not sufficient to satisfy the TCP requirement. (Dkt. No. 438, Def.'s Mot. Summ. J 4 (arguing that the new TCP programs were "recycled" from the previous year).) This argument is also untenable. There is nothing in the 2002 SAA that prevents a TCP project from being used in more than one year. Section 6.1 of the agreement requires only that the projects "result in improvements in productivity adequate to generate reductions in [Defendant's] costs equal to at least five percent (5%) of [Defendant's] total purchases of Items hereunder during such calendar year." (2002 SAA § 6.1.) Thus, as long as a project listed in an annual TCP report contributed to the 5% cost reduction for that year, it does not matter that it has been identified as a TCP project in a prior year.

There are genuine issues of material fact as to whether Plaintiff satisfied the TCP requirement for years 2003-2006. Summary judgment in favor of Defendant is not appropriate.

2. Year 2007

Plaintiff acknowledges that it failed to comply with the TCP requirement for 2007. (Dkt. No. 464, Pl.'s Resp. 14-15.) Plaintiff, however, argues that it was excused from

5

performance for that year because, by issuing its termination notice on February 15, 2007, Defendant manifested an intent to focus on phase-out issues rather than "cooperative cost saving ventures," and thereby prevented Plaintiff from fulfilling the TCP requirement. (*Id.* (referring to *Kiff Contractors, Inc. v. Beeman*, 159 N.W.2d 144, 146 (Mich. Ct. App. 1968) (discussing the doctrine of prevention in Michigan)).)

The doctrine of prevention does not excuse Plaintiff from complying with the TCP requirement in 2007. First, Section 6.1 of the 2002 SAA makes clear that the TCP requirement applies "each calendar year during the term of [the 2002 SAA]," which includes 2007.[2] It does not make an exception for a phase-out year, which would inevitably come under the limited term contract. Second, there is no requirement that Defendant cooperate with or otherwise assist Plaintiff in Plaintiff's development of TCP projects.[3] The only portion of the TCP requirement that requires Defendant's involvement is when the cost-saving potential of a particular project is not clear. (2002 SAA § 6.2.) In that case the contract requires a cooperative determination of cost-saving potential, but this provision is separate and independent from Plaintiff's obligation to develop and submit TCP projects to

---

[2]At oral argument, Plaintiff also argued that cost savings in excess of 5% in any given year could be carried over and applied to the TCP requirement for subsequent years. However, the contract clearly indicates that the parties intended that TCP programs should be introduced, and savings should be assessed, on a year-to-year basis. (2002 SAA § 6.1.)

[3]Plaintiff argues that language in the preamble of the contract, that "Whirlpool and Supplier intend to work cooperatively to develop improved Items," creates the requirement that Whirlpool's input was required in the development of TCP projects. (2002 SAA p. 2.) However, this language appears to create merely a general and aspirational statement of cooperation rather than a specific obligation, especially a specific obligation that should be read in connection with the TCP requirement.

6

begin with. Since Defendant's involvement in TCP project development was not necessary, there was nothing to prevent Plaintiff from submitting TCP projects during the phase-out period.

The contract unambiguously required Plaintiff to satisfy the TCP requirement for 2007. Plaintiff has acknowledged that it did not submit any TCP proposals for that year. Defendant is entitled to summary judgment on Defendant's claim that Plaintiff failed to satisfy the TCP requirement for 2007. However, there are issues of fact surrounding whether and to what extent Defendant was damaged by Plaintiff's breach of the TCP requirement for 2007. *See Dorsey v. United Parcel Serv.*, 195 F.3d 814, 818 (6th Cir. 1999) (granting summary judgment on the movant's claim but reserving the issue of damages for the jury).

### III. Conclusion

Plaintiff has presented sufficient evidence that it complied with the TCP requirement in years 2003-2006 to withstand Defendant's present motion. However, Plaintiff has not presented sufficient evidence that it complied with the TCP requirement in year 2007 to withstand Defendant's present motion. Defendant is entitled to summary judgment on Defendant's breach of contract claim for Plaintiff's failure to satisfy the TCP requirement in 2007, though factual development is necessary to determine the existence and extent of Defendant's damages for this breach.

An order consistent with this opinion will be entered.

Dated: October 13, 2009     /s/ Robert Holmes Bell
                            ROBERT HOLMES BELL
                            UNITED STATES DISTRICT JUDGE