UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

    Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

    Defendants,

and

WHIRLPOOL CORPORATION,

    Counter-Plaintiff,

v.

WHITESELL CORPORATION,

    Counter-Defendant.
_____/

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## **MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendant Whirlpool Corporation's motion in limine to exclude hearsay statements of Sky Hempy (Dkt. No. 645). For the reasons that follow, this motion will be denied.

In this motion in limine, Defendant asks the Court to exclude "any evidence of statements attributed to Mr. Hempy" on the ground that all of Mr. Hempy's statements

constitute inadmissible hearsay. (Dkt. No. 645, Def.'s Mot. 4.) The Court, however, cannot make a determination as to the admissibility of Mr. Hempy's statements without taking into account the content of each individual statement, the reason for which it is being offered, and all other characteristics of the statement and the surrounding circumstances that bear on its admissibility. If, and when, during trial, Plaintiff attempts to introduce statements made by Mr. Hempy, the Court invites Defendant to make a proper objection at that time. Although the Court opts to reserve its decision to exclude Mr. Hempy's statements until it can analyze the individual characteristics of the statements and context in which the statements are offered, the Court takes this opportunity to address several disputed points of law and fact that will undoubtedly bear on the admissibility of some or all of Mr. Hempy's statements.

1. Rule 801(d)(2)(D) of the Federal Rules of Evidence

First, the parties dispute the applicability of Rule 801(d)(2)(D) of the Federal Rules of Evidence to Mr. Hempy's statements. Rule 801(d)(2) creates a series of exclusions to the definition of hearsay for statements that are considered "admission[s] by party-opponents." Under Rule 801(d)(2)(D), an admission by a party-opponent can be "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Unlike its counterpart, Rule 801(d)(2)(C), Rule 801(d)(2)(D) does not require that a declarant be "authorized by the party to make a statement" before the statement can be attributed to the party. *Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981) (noting

constitute inadmissible hearsay. (Dkt. No. 645, Def.'s Mot. 4.) The Court, however, cannot make a determination as to the admissibility of Mr. Hempy's statements without taking into account the content of each individual statement, the reason for which it is being offered, and all other characteristics of the statement and the surrounding circumstances that bear on its admissibility. If, and when, during trial, Plaintiff attempts to introduce statements made by Mr. Hempy, the Court invites Defendant to make a proper objection at that time. Although the Court opts to reserve its decision to exclude Mr. Hempy's statements until it can analyze the individual characteristics of the statements and context in which the statements are offered, the Court takes this opportunity to address several disputed points of law and fact that will undoubtedly bear on the admissibility of some or all of Mr. Hempy's statements.

1. Rule 801(d)(2)(D) of the Federal Rules of Evidence

First, the parties dispute the applicability of Rule 801(d)(2)(D) of the Federal Rules of Evidence to Mr. Hempy's statements. Rule 801(d)(2) creates a series of exclusions to the definition of hearsay for statements that are considered "admission[s] by party-opponents." Under Rule 801(d)(2)(D), an admission by a party-opponent can be "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Unlike its counterpart, Rule 801(d)(2)(C), Rule 801(d)(2)(D) does not require that a declarant be "authorized by the party to make a statement" before the statement can be attributed to the party. *Nekolny v. Painter*, 653 F.2d 1164, 1171-72 (7th Cir. 1981) (noting

that 801(d)(2)(C) requires authority to speak but 801(d)(2)(D) does not); *see also* Fed. R. Evid. 801(d)(2)(D) advisory committee's note (suggesting that subsection (D) can cover statements that are "damaging" to employers because there is no requirement that the declarant-employee be authorized to speak). Instead, Rule 801(d)(2)(D) requires only that (1) the declarant is the party's employee at the time the statement is made, and (2) the statement "concern[s] a matter" within the scope of the declarant's employment. Fed. R. Evid. 801(d)(2)(D).

The parties do not dispute that Mr. Hempy was a Whirlpool employee when he made all of the statements currently at issue. Thus, whether Rule 801(d)(2) applies depends on whether Mr. Hempy's statements "concern[ed] a matter within the scope of [Mr. Hempy's] employment" at the time he made them.

"Not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir.) Several Sixth Circuit cases address whether statements relating to an employer's hiring policies were within the scope of the declarant's employment such that those statements could be attributed to the employer as party admissions under Rule 801(d)(2). The Sixth Circuit has repeatedly held that statements relating to an employer's hiring practices are only within the scope of the declarant's employment when the declarant has the ability to exercise some control over hiring decisions. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 528 (6th Cir. 2007), *abrogated on other grounds by Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009) (holding

3

that the declarant "had the authority to hire and fire salespeople, and therefore, [the declarant's statement] concerned a matter within the scope of his employment"); *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (finding it important that the declarant was a high-level employee with the power to affect employment decisions); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1983) (finding Rule 801(d)(2)(D) inapplicable because the declarant "was not involved in any of the critical appraisals of [the plaintiff's] performance"); *Hill v. Spiegal*, 708 F.2d 233, 237 (6th Cir. 1983) (noting that there must be "evidence that [the declarant] had . . . involvement in the decision to discharge [the plaintiff]"); *McLeod v. Parsons Corp.*, 73 F. App'x 846, 852 (6th Cir. 2003) (unpublished) ("In order to determine whether a statement was made within the scope of employment, this Court considers whether the statement was related to the decision making process . . . ."); *Liadis v. Sears, Roebuck and Co.*, 47 F. App'x 295, 303 (6th Cir. 2002) (unpublished) ("Statements by employees are outside the scope of an employee's employment when they concern decisionmaking processes into which the employee has no input, or decisions to which they were not a party.") Other circuits agree that the ability of the declarant to exercise some degree of control or influence over the subject matter to which the statements relate is necessary for the statements to fall within the 801(d)(2)(D) exception. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800-01 (11th Cir. 2005); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998) (citing cases from several different circuits). Thus, for Mr. Hempy's statements concerning Whirlpool's alleged breach of the 2002 SAA to fit

4

within Rule 801(d)(2)(D), the record must show that the nature of Mr. Hempy's employment provided him with the ability to influence Whirlpool's alleged decision to breach the 2002 SAA.

Until February of 2000, Mr. Hempy served as the contract administrator of the 1995 SAA. (Dkt. No. 645, Def.'s Mot. 1.) Though this position likely afforded Mr. Hempy at least marginal ability to influence Whirlpool's compliance with the 1995 SAA, it does not appear that this position gave Mr. Hempy any influence over the 2002 SAA, the negotiations of which had not even begun by the time Mr. Hempy assumed another post.

From November of 2002 to 2005, Mr. Hempy held the position of supplier development buyer. (Dkt. No. 645, Def.'s Mot. Ex. 1 pp. 22-23.) In this capacity, he was involved in, and occasionally spearheaded, Whirlpool's Strategic Sourcing Development ("SSD") projects, which were designed to collect information on suppliers for many different aspects of Whirlpool's appliance production process. (*Id.*) For example, in 2003 Mr. Hempy participated in the "connector wiring integrity SSD" and the "Reynosa make versus buy" SSD. (*Id.* at p. 25-26.) However, these particular projects do not appear to relate to fasteners, let alone suggest that Mr. Hempy had any control over Whirlpool's compliance with the 2002 SAA.

On July 29, 2004, Whirlpool implemented the "Fastener SSD" project. Mr. Hempy was a "core team member" of this project. (Dkt. No. 648, Pl.'s Ex. B.) The project's objective was to:

5

> Conduct a market assessment sourcing / strategy & source Fastener type parts for (Dishwasher, Cooking, Laundry & Refrigeration) ([including parts falling within Whirlpool Commodity Codes 497 and 503]) by 02/05 that takes advantage of cost structures that leverage NAR synergies, supplier capabilities and their strategic advantages.

(*Id.*) One of the enumerated "key reasons for this project" was to "develop a market assessment / sourcing strategy for [parts within commodity codes] 497 & 503," by February of 2005, a date almost three years prior to the expiration of the 2002 SAA. (*Id.*) It appears to the Court that, given the reasons for the creation of the Fastener SSD project, each member of the project had at least some ability to determine the suppliers from which Defendant purchased fasteners while the 2002 SAA was in effect.

Mr. Hempy's promotion from supplier development buyer to lead buyer for steel in 2005 appears to have ended his association with fasteners altogether, and with it his ability to influence Whirlpool's compliance with the 2002 SAA. (Dkt. No. 645, Def.'s Mot. Ex. 1 p. 34.)

Because, while a member of the Fastener SSD program, Mr. Hempy's job description enabled him to influence the fastener suppliers with which Defendant did business, statements made by Mr. Hempy from July 29, 2004 to February of 2005, relating to Whirlpool's compliance, or lack thereof, with the 2002 SAA "concern[ed] a matter within the scope" of Mr. Hempy's employment for purposes of Rule 801(d)(2)(D). Conversely, it does not appear to the Court that Mr. Hempy's positions before and after his association with

6

the Fastener SSD project afforded him similar influence.[1]  Absent evidence suggesting otherwise, statements made by Mr. Hempy during these time periods relating to Whirlpool's compliance, or lack thereof, with the 2002 SAA did not "concern[] a matter within the scope" of Mr. Hempy's employment for purposes of 801(d)(2)(D).

2. Rule 804(b)(3) of the Federal Rules of Evidence

Second, the parties dispute the applicability of Rule 804(b)(3) of the Federal Rules of Evidence to Mr. Hempy's statements. Rule 804(b)(3) creates an exception to the hearsay rule for statements against the declarant's interest. For the exception to apply, at the time of its making, the statement must be:

> so far contrary to the declarant's pecuniary or proprietary interest or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement without believing it to be true.

Fed. R. Evid. 804(b)(3).

Defendant correctly argues that the Court should not look to whether the statements were against Whirlpool's interest, which they undoubtedly were, but to whether the

---

[1] In support of its argument that fastener supplier selection was within the scope of Mr. Hempy's employment even after the dissolution of the Fastener SSD program, Plaintiff presents a copy of a Whirlpool purchase order requesting the shipment of certain category 503 fasteners from a supplier other than Plaintiff signed by Mr. Hempy as "buyer." (Dkt. No. 649, Pl.'s Ex. C.) However, the purchase order also required the signed approval of both a Whirlpool manager and director, suggesting that Mr. Hempy played merely an administrative role in a decision ultimately made by his superiors to purchase the category 503 fasteners.

7

statements were against Mr. Hempy's own personal interest. Mr. Hempy was not authorized to make the statements on behalf of Whirlpool, and so Mr. Hempy himself, not Whirlpool, is the "declarant" for purposes of the exception.[2]

Plaintiff argues that Mr. Hempy's statements were against his pecuniary and proprietary interest because they "put his employment at risk." (Dkt. No. 640, Pl.'s Resp. 9.) A statement that puts the declarant's employment at risk can qualify as a statement that is against the declarant's pecuniary and proprietary interest. *Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 242 (D.C. Cir. 1969). However, at the time he made many of his statements, Mr. Hempy had no expectation that they would put his employment at risk because he had no expectation that his employer would ever find out that he made them. Upon request from Mr. Hempy, Mr. Whitesell repeatedly represented that he would not disclose the statements, or their source, "to anybody outside of [Mr. Whitesell] and [Mr. Hempy]." (Dkt. No. 645, Def.'s Mot. Ex. 4 p. 58, Ex. 3 p. 13.) Mr. Whitesell certainly had no control over Mr. Hempy's employment, and those that did were meant to be kept in the dark. Mr. Hempy was able to make extremely damaging accusations against his employer under the assumption that the accusations would not be traced back to him. Rule 804(b)(3) exempts statements against interest from the scope of the prohibition against hearsay because "persons do not make statements which are damaging to themselves unless satisfied for good

---

[2]As discussed above, a declarant need not be authorized to speak on behalf of his employer for his statements to qualify as party admissions under Fed. R. Evid. 801(d)(2)(D).

8

reason that they are true." Fed. R. Evid. 804(b)(3) advisory committee's note. However, when a declarant takes precautions to ensure that his statements will not be damaging to himself, as Mr. Hempy did here, the indicia of reliability that justify the exception disappear, making the use of the exception no longer appropriate. For this reason, statements made by Mr. Hempy, that Mr. Hempy intended as confidential communications between himself and Mr. Whitesell, do not fall within the 804(b)(3) hearsay exception for statements against the declarant's interest.

3. Rule 403 of the Federal Rules of Evidence

Finally, the Court acknowledges the sensitivity of the context of the communications between Mr. Hempy and Mr. Whitesell and the tragic circumstances surrounding Mr. Hempy's death. Though, like the admissibility of Mr. Hempy's statements, the prejudicial and probative value of each statement, for purposes of a Rule 403 balancing test, cannot be determined ex ante, the Court will make every effort to honor Rule 403 in light of the sensitive factual background of the case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion in limine to exclude hearsay statements of Sky Hempy (Dkt. No. 645) is **DENIED** without prejudice. **IT IS FURTHER ORDERED** that the hearsay exclusion contained in Rule 801(d)(2)(D) of the Federal Rules of Evidence shall apply to statements that relate to Defendant's alleged breach of the 2002 SAA made by Sky Hempy during Mr. Hempy's association with Whirlpool's "Fastener SSD

9

Project." **IT IS FURTHER ORDERED** that the hearsay exception contained in Rule 804(b)(3) of the Federal Rules of Evidence shall not apply to statements made by Mr. Hempy that were intended as confidential communications between Mr. Hempy and Mr. Whitesell or any other Whitesell employee.


Dated: October 27, 2009                                  /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE