UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

    Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

    Defendants,

and

WHIRLPOOL CORPORATION,

    Counter-Plaintiff,

v.

WHITESELL CORPORATION,

    Counter-Defendant.
_____/

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## MEMORANDUM OPINION ON PLAINTIFF'S BENCH MEMORANDUM REGARDING SAA PROVISIONS 4.6 v. 4.8

Plaintiff seeks to claim lost profits for items under Section 4.8 of the agreement, or the "meeting competition" clause. (Dkt. No. 711 Ex. 2.) A claim for lost profits for any part can arise only when a specific contractual provision confers on Plaintiff the right to supply the part. The central issue presented by Plaintiff's memorandum is whether Section 4.8 actually confers on Plaintiff the right to supply any parts. Section 4.8 states:

>Meeting Competition: If Whirlpool is offered the opportunity to purchase a group of Comparable Items[1] constituting at least 50% of Whirlpool's total annual forecasted dollar volume of Items and having at least as many Items whose forecasted annual purchase volume is below 100,000 pieces as Items whose forecasted annual purchase volume is over 100,000 pieces at an aggregate price less than that which Whirlpool could realize under this Agreement (taking into account all pricing factors set forth herein), or if a third party offers Whirlpool a technology or quality advantage not provided by Supplier, Whirlpool may so notify Supplier in writing and submit written proof of such offer. If Supplier fails to notify Whirlpool of its election to meet the third party offer within ten (10) days after Whirlpool notifies Supplier of the offer, Whirlpool may buy the Comparable Items from the third party. Any Comparable Items purchased by Whirlpool hereunder shall be deemed to have been purchased from Supplier for purposed [sic] of determining whether or not Whirlpool has met the purchase commitments set forth in Section 3 of this Agreement.
>
>In applying the foregoing provision, it is the intent of both parties to this Agreement that Supplier shall not be asked to meet a quotation:
>   (a) from a supplier which does not have total supplier capabilities equal to those of Supplier; or,
>   (b) not including a representative cross-section of Items and/or volumes (i.e. - Supplier is not to be asked to meet "Cherry-Picking" quotations).
>
>Whirlpool agrees to waive its right to enforce this clause in the Agreement until July 1, 2005.

Section 4.8 creates rights in favor of Defendant, not Plaintiff. It excuses Defendant from purchase obligations *created by other provisions of the agreement* in the event that certain conditions are met.[2] Section 4.8 does not itself require that Defendant purchase any

---

[1] The agreement defines "Comparable Items" as "a model of Goods of comparable kind, quality and performance characteristics." (2002 SAA § 4.7.)

[2] Some of the "other conditions" include that the quoted items be "comparable" to items Defendant is purchasing under the agreement, be offered at a price lower than that provided by

(continued...)

2

items from Plaintiff, or standing alone confer any rights on Plaintiff to supply any parts to Defendant. Defendant's obligation to purchase parts from Plaintiff, an obligation that Section 4.8 is created to excuse, must arise from a different provision in the contract, such as Section 4.6 or Exhibit B.

Section 4.8 and evidence pertaining to the parameters it creates would be relevant to prove that Defendant was not, in fact, excused from satisfying the obligations to purchase items from Plaintiff created by other provisions of the contract. For example, Plaintiff could present evidence that parts supplied by a third party did not represent a cross section of the parts supplied by Plaintiff in order to show that Defendant was not, in fact, allowed to purchase parts from a third party under Section 4.8. However, this evidence would do nothing more than work to negate a defense available to Defendant. To be entitled to lost profits Plaintiff would still need to demonstrate that it was contractually permitted to supply the parts in the first place.

In short, for every part for which Plaintiff seeks lost profits, a threshold question is what contractual provision vests Plaintiff with supply rights for that part. Section 4.8 may not serve as the right-conferring provision, because Section 4.8 merely operates to excuse

---

[2](...continued)
Plaintiff, have an annual forecasted purchase volume above and below a certain quantity, that the third-party supplying the quote have "total supplier capabilities substantially equal" to those of Plaintiff, and that the quoted items represent a cross-section of the items that Defendant is obligated to purchase from Plaintiff. Though these "other conditions" restrict Defendant's ability to rely on Section 4.8 as justification for purchasing items from suppliers other than Plaintiff, they do not vest Plaintiff with any substantive rights, such as the right to supply certain items.

Defendant from purchase obligations that have been created by other provisions. In addition, Section 4.6 may not serve as the right-conferring provision, at least to the extent Section 4.6 allows Plaintiff to supply new parts created to circumvent the agreement, because the Court has previously granted summary judgment in favor of Defendant on Plaintiff's claim for lost profits on this basis. (Dkt. No. 621.)


Dated: February 3, 2010                        /s/ Robert Holmes Bell
                                                       ROBERT HOLMES BELL
                                                       UNITED STATES DISTRICT JUDGE