UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WHITESELL CORPORATION,

    Plaintiff,

v.

WHIRLPOOL CORPORATION,
WHIRLPOOL MEXICO S.A. de C.V.,
and JOSEPH SHARKEY,

    Defendants,

and

WHIRLPOOL CORPORATION,

    Counter-Plaintiff,

v.

WHITESELL CORPORATION,

    Counter-Defendant.
_____/

Case No. 1:05-CV-679

HON. ROBERT HOLMES BELL

## OPINION

This matter is before the Court on Defendant Whirlpool Corporation's motion for judgment as a matter of law or, in the alternative, for a new trial. (Dkt. No. 753.) For the reasons that follow, this motion will be denied.

### I. Background

This breach of contract action has been the subject of extensive briefing and

consideration. By deciding the six motions for summary judgment filed by the parties, as well as numerous additional pre-trial motions, the Court was able to narrow the issues involved to those that were fit for jury determination. The parties failed to settle, and as a result the Court conducted a three week jury trial in late January and early February, 2010. At the close of Plaintiff's proofs on February 5, 2010, Defendant filed a motion for partial directed verdict (Dkt. No. 717), which the Court denied. On February 17, 2010, the jury returned a verdict in favor of Plaintiff in the amount of $25.7 million. On March 18, 2010, Defendant filed the present motion for judgment as a matter of law or, in the alternative, for a new trial.

## II. Law and Analysis

A motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure should be granted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." When considering a Rule 50 motion for judgment as a matter of law, the court should review all the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Rule 59 of the Federal Rules of Civil Procedure permits a trial court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in

federal court." This Court has summarized the standard governing motions for a new trial as follows:

> In deciding whether to order a new trial, the governing consideration is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice. A motion for a new trial may be granted if the verdict is clearly against the weight of the evidence. When a motion for new trial is based on a claim that the verdict is against the weight of the evidence, the verdict is not to be set aside simply because the court believes that another outcome is more justified. The court is to accept the jury's verdict if it is one which reasonably could have been reached. A new trial is required only when a jury has reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.

*Kirby v. Grand Traverse County Sheriff's Dep't*, No. 1:07-CV-566, 2009 U.S. Dist. LEXIS 89301, at *2 (W.D. Mich. Sept. 28, 2009) (citations omitted). Defendant asserts approximately eight separate reasons why it is entitled to judgment as a matter of law or a new trial.

*1. Paragraph 20 of Whirlpool's Purchase Orders*

For the reasons stated in the Court's October 13, 2009, Opinion (Dkt. No. 611) and the Court's October 30, 2009, Opinion (Dkt. No. 661), ¶ 20 of Whirlpool's purchase orders cannot reasonably be read in any other manner than to disclaim Whirlpool's liability "for any loss or damage" arising from breach of the agreement, not only anticipated profits and incidental and consequential damages, and for this reason ¶ 20 violates the principle

3

embodied by Mich. Comp. Laws § 440.2719 that at least "minimum adequate remedies" be left available to the parties.[1] Further, for the reasons stated in the Court's October 30, 2009, Opinion (Dkt. No. 661), giving the term "clause" the meaning intended by § 440.2719 cmt. 1, it would be unreasonable to conclude that ¶ 20 is anything other than one self-contained contractual "clause" not subject to the parsing requested by Defendant.

*2. Safety Stock*

For the reasons stated in the Court's October 13, 2009, Opinion (Dkt. No. 621), whether the 100% purchase requirement applied only to Defendant's requirements for parts used in active production lines, or whether it extended to all parts purchased by Defendant including safety stock, is an ambiguous question of contract interpretation that was properly left for jury determination. In addition, throughout the course of the trial Plaintiff presented significant evidence on which the jury could reasonably determine that the 100% purchase requirement extended to all parts purchased by Defendant, including safety stock. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/26 Whitesell Test. 355-60; *id.* at Ex. C-7, 1/28 Mott Test. 761.)

---

[1]In further support of its decision to invalidate ¶ 20, the Court notes that, while consequential damages may be completely "excluded" under Mich. Comp. Laws § 440.2719(3), the parties may only "limit" or "alter," not completely exclude, the total measure of damages recoverable under §§ (1)(a). The (apparently intentional) failure of the legislature to allow parties to "exclude" the total measure of damages recoverable reinforces the principle made explicit in comment 1 that the parties must leave open "minimum adequate remedies." After concluding that ¶ 20 deprives Whitesell of all available remedies, the only way to give legal effect to Mich. Comp. Laws § 440.2719(1) is to strike ¶ 20 and replace it with the remedies provided by the Michigan Commercial Code.

*3. Dual Sourced/Diverted Parts (including the "Benton Harbor" Parts)*

The jury awarded damages of $8.7 million, out of a requested $12.7 million, for fifty-two[2] Commodity Code 497 and 503 parts that Defendant purchased from other suppliers. Substantial evidence supports the jury's award with respect to these parts.

Parts 8557888 and 8579561 are the so-called "Benton Harbor" parts. The Benton Harbor parts represented approximately $5 million in damages. For the reasons stated in the Court's October 13, 2009, Opinion (Dkt. No. 613), Plaintiff's claim for the Benton Harbor parts presented three issues of fact properly reserved for jury determination: (1) whether Whirlpool facilities that are not considered manufacturing divisions are subject to the 2002 SAA; (2) whether Whirlpool's Benton Harbor facility is not a manufacturing facility; and (3) whether the 2002 SAA applies to items used, but not purchased, by a facility covered by the 2002 SAA. In addition, throughout the course of the trial Plaintiff presented significant evidence on which the jury could reasonably resolve each of these ambiguities in favor of Plaintiff. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/27 Whitesell Test. 409-412; *id.* at Ex. C-7, 1/28 Mott Test. 753-54; *id.* at Ex. C-7, 2/9 Mott Test. 55.)

Plaintiff also presented substantial evidence that part 62596, a 503 part, fell within the

---

[2] The parts are: 8557888, 62596, 3400306, W10001130, 8318096, 3400526, W10109200, 9741232, W10001320, W10031780, W10112537, W10112540, 8579561, W10075890, 8523704, 8534063, W10067840, 3400231, 8533995, W10076010, 8533965, 3400090, 6565324, 3400412, W10031790, W10119828, 3400069, 8281183, 3400001, 9762971, 2005921, W10033260, W10017850, 388094, W10114533, 8533957, W10119872, W10001580, 1185948, W10004990, 8533890, 480470, W10001340, W10000070, 8564084, 3400639, 8534015, W10078270, 8281136, 8533835, 3400217, 3400235. (Dkt. No. 754, Ex. 17.)

scope of the agreement, and that Defendant breached the 2002 SAA by failing to purchase 62596 from Plaintiff. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/27 Whitesell Test. 412-20.) Part 62596 represented approximately $3.2 million in damages.

The majority of the remaining forty-nine dual sourced/diverted parts were introduced into evidence by means of Plaintiff's demonstrative exhibits 23 and 28. When the demonstratives were introduced, Neil Whitesell, on direct examination, affirmed that the demonstratives represented "list[s] of parts that we were never given the opportunity to bid on" before they were sourced to other suppliers in violation of Section 4.6 of the agreement. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/27 Whitesell Test. 427-28.) Though Defendant is correct that demonstratives themselves are not evidence, Neil Whitesell's testimony affirming the accuracy of the demonstratives is evidence.

Even if the Court were to conclude that Plaintiff did not present sufficient evidence of breach with respect to various parts that comprised Plaintiff's Dual Sourced/Diverted Parts claim, such a conclusion would not be problematic unless those parts represented damages totaling over $4 million. By awarding Plaintiff only $8.7 million out of Plaintiff's total claim for $12.7 million, the jury itself recognized that the evidence was not sufficient to support Plaintiff's claim for damages for $4 million in dual sourced/diverted parts. Considering the substantial evidence with respect to Plaintiff's damages claim for the Benton Harbor parts, part 62596, and the parts appearing on demonstratives 23 and 28, as well as the substantial dollar value of these categories of parts, Plaintiff introduced sufficient evidence to justify a

6

jury verdict of at least $8.7 million on Plaintiff's dual sourced/diverted parts claim.

*4. Miscoded Parts*

For the reasons stated in the Court's October 13, 2009, Opinion (Dkt. No. 621), and November 4, 2009, Memorandum Opinion (Dkt. No. 668), whether the 'intended scope' of the 2002 SAA is limited only to those parts classified as Whirlpool Commodity Codes 497 and 503, or whether it extends to all threaded and cold-headed parts, regardless of the commodity code, is an ambiguous question of contract interpretation that was properly left for jury determination. In addition, Plaintiff presented sufficient evidence that the parts it claims were "miscoded" were cold-headed or threaded parts that were placed in Whirlpool Commodity Codes other than 497 or 503. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/27 Whitesell Test. 334-55.)

*5. Phase-Out Claim*

According to Section 13.4 of the 2002 SAA, after Whirlpool issued its notice of termination on February 16, 2007, Whirlpool was "relieved of the purchase commitment" set forth in Section 3 of the 2002 SAA, but Whirlpool was required to "use its best efforts to gradually decrease the quantity of Items purchased from [Whitesell] over the course of the Phase-Out Period." For the reasons stated in the Court's October 13, 2009, Opinion (Dkt. No. 621) what "best efforts" required in this context, and whether Defendant complied with it, involved questions of fact properly left for jury determination.

Section 13.4 also provided that, during the phase out period, Whirlpool was required

to purchase all of Whitesell's "pre-approved" inventory. "Pre-approved" inventory is not defined in the agreement. Whether "pre-approved" inventory referred to inventory that had passed the first-part-approval process, or whether it referred to inventory that aligned with the firm, tentative and forecast period commitments, is a question of fact that was properly reserved for jury determination.[3] In addition, Plaintiff submitted sufficient evidence for the jury to determine that "pre-approved" inventory referred to inventory that had passed the first-part-approval process. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/27 Whitesell Test. 433-35.)

*6. Double Counting*

Defendant requests a new trial based on alleged double counting by Plaintiff's damages expert, William Bradshaw. For several reasons, a new trial is not warranted on this basis.

First, it is not clear to the Court that Mr. Bradshaw did engage in double-counting of certain damages claims. Defendant argues that, had Whirlpool accepted Whitesell's offer to supply part 62596, "the revenue associated with that part number would have been credited toward the B-1 obligation." (Dkt. No. 754, at 17.) However, 62596 was a Commodity Code 503 part, and it was possible that the jury determined that Defendant's obligation to purchase part 62596 from Plaintiff was independent from Defendant's B-1 obligation to provide $5-6 million in new business to Plaintiff each year. In such a case, the

---

[3]Defendant did not move for summary judgment on this issue.

8

revenue associated with part 62596 would not have been credited toward the B-1 obligation. As Plaintiff points out in its response brief, the B-1 obligation was simply to provide $5-6 million in "new business" generally, not to provide $5-6 million in new business from parts drawn from a defined bank of parts.

Second, even if the Court were to agree that, had Whirlpool been required to purchase 62596 from Plaintiff, the revenue from that purchase should be credited toward the B-1 shortfall, it is not clear that the jury even determined that Whirlpool was required to purchase part 62596 from Defendant in the first place. As discussed above, the jury awarded Plaintiff $8.7 million for Plaintiff's "dual sourced/diverted" parts claim, which included Plaintiff's claim for part 62596. The jury's award was $4 million less than Plaintiff requested. Plaintiff's claim for part 62596 was around $3.2 million. It is possible that the $4 million in damages claims rejected by the jury includes Plaintiff's claims for 62596. Even Defendant would agree that, if Defendant was not required to supply 62596 to Plaintiff in the first place, 62596 should not have been credited toward the B-1 shortfall.

Finally, the Court notes that Defendant extensively tried its double-counting argument to the jury. As the above discussion indicates, it is not clear whether the jury accepted the argument, or rejected it. Regardless, though, Defendant had more than a fair opportunity to develop this issue during cross-examination of Mr. Bradshaw and during direct examination of Defendant's damages expert, Richard Bero (*See* Dkt. No. 753, Ex. 31 at 129), and Defendant is not entitled to a new trial because it is unhappy with the way the issue was resolved.

*7. The B-1 Shortfall*

Plaintiff's "capabilities," and the items that Defendant offered to allow Plaintiff to supply that counted toward the B-1 promise,[4] were issues of fact that were properly left for jury determination. In addition, Plaintiff presented sufficient evidence on which the jury could reasonably determine that Plaintiff suffered $10.1 million in damages resulting from the B-1 shortfall. (*See, e.g.*, Dkt. No. 772, Pl.'s Resp. Ex. C-9, 1/26 Whitesell Test. 258-97; *id.* at 2/12 Whitesell Test. 37-47.)

*8. Electrolux Litigation*

For the reasons stated by this Court on the record during trial on January 27, 2010, Neil Whitesell's affidavit filed in connection with the Electrolux litigation was properly excluded under Federal Rule of Civil Procedure 403. (Dkt. No. 753, Ex. 19 pp. 140-44.) Had the Court permitted Defendant to introduce the affidavit, Plaintiff likely would have attempted to put the statements in context by explaining the nature of the Electrolux litigation, which would have unduly complicated the issues and greatly prejudiced Plaintiff. In addition, Defendant was able to introduce evidence of Plaintiff's "capabilities" by other means.

### III. Conclusion

The Court is satisfied that the jurors attentively and competently absorbed the complex issues that arose throughout the course of this prolonged trial and rendered a reasoned verdict

---

[4] Defendant did not move for summary judgment on these issues.

based on what they had observed. In all respects, Defendant received a full and fair trial, and Defendant's attempt to escape the judgment is wholly without merit. Accordingly, Defendant's motion for judgment as a matter of law or, in the alternative, a new trial, will be denied. An order consistent with this opinion shall be entered.


Dated:  May 10, 2010                                         /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE